UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jackson National Life Insurance Co.,            Civil No. 09-1024 (JMR/FLN)

         Plaintiff,

v.                                                       **REPORT AND RECOMMENDATION**

Workman Securities Corp.,

         Defendant and
         Third-Party Plaintiff,

v.

Gayle Sanderson,

         Third-Party Defendant,

and

Thomas M. Petracek,

         Intervenor.

---

Shane H. Anderson for Plaintiff.
Christopher P. Parrington for Defendant and Third-Party Plaintiff.
Raymond L. Hansen for Third-Party Defendant.
Chad A. Snyder for Intervenor.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 15, 2010 on Third-Party Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#38]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Third-Party Defendant's motion to dismiss be **GRANTED**.

## I. BACKGROUND

**A. The Original Lawsuit**

This case arose from a dispute between Jackson National Life Insurance Company ("Jackson National") and broker-dealer Workman Securities Corporation ("Workman"). Jackson National and Workman entered into a contractual agreement pursuant to which Workman was given permission to sell Jackson National life and annuity contracts. (Doc. No. 25, First Am. Compl. ¶ 8.) In exchange, Workman agreed to supervise its producers, to defend and indemnify Jackson National, and to cooperate in investigating and settling claims arising from the relationship. *Id.* ¶¶ 15, 16.

On January 26, 2006, Third-Party Defendant Gayle Sanderson ("Sanderson") purchased a Jackson National Perspective II Variable Annuity for $1,070,823.27. *Id.* ¶ 17. Her purchase was based on counseling and alleged fraudulent misrepresentations by financial advisor Thomas Petracek ("Petracek"). *See id.* ¶¶ 18-26. At the time Petracek solicited Sanderson's purchase of the annuity, Petracek was not a registered representative of Workman and was not authorized to sell Jackson National products. *Id.* ¶ 20. Petracek's son-in-law, Derrick Shields ("Shields") was appointed as a Workman producer on January 18, 2006 and ultimately signed Sanderson's application to purchase the annuity on January 24, 2006. *See id.* ¶ 19.

On September 25, 2008, Sanderson wrote to Jackson National and alleged that Petracek had made misrepresentations to her in connection with the sale, including failing to notify her that "Petracek was never a licensed agent of Jackson National," and asked for a refund of the purchase price of the annuity. (Doc. No. 58, Parrington Aff., Ex. 1 at 10.)

Jackson National rescinded the annuity policy and reimbursed Sanderson for her entire initial investment of $1,070,823.27, which included a market loss of $362,508.28 in exchange

for a release of Jackson National and its agents relating to the solicitation, sale, and issuance of the annuity. (Doc. No. 41, Heuel Aff., Ex. 1.) Sanderson also assigned to Jackson National claims for damages she may have had against Workman and anyone else who may be responsible for damages that Sanderson suffered. *Id.* Sanderson agreed to cooperate with Jackson National in any lawsuit it may pursue. *Id.*[1]

Jackson National then initiated an action against Workman alleging: Count 1: Breach of Contract- Refusal to Indemnify; Count 2: Breach of Contract- Failure to Supervise; Count 3: Breach of Contract- Failure to Cooperate; and Count 4: Negligence[2]. (*See* Doc. 25, First Am. Compl.) Workman then brought Sanderson and Waddell & Reed, Inc.[3] into the suit as third-party defendants. (Doc. No. 32, Third-Party Compl.)

**B. Third-Party Complaint Against Sanderson**

On October 19, 2009, Workman filed a Third-Party Complaint against Sanderson and Waddell & Reed, Inc. (Doc. No. 32, Third-Party Compl.) Workman alleges that Sanderson is liable to it in contribution "for failing to mitigate her damages and thus Jackson National's damages." *Id.* ¶¶ 5, 25-42. Workman asserts that "Sanderson had a duty to mitigate her damages

---

1 The "Release and Assignment of Rights" signed by Sanderson releases Jackson National from liability related to Sanderson's annuity and provides, in part: "I acknowledge that, as a result of the solicitation and sale of the contract, I may have claims for damages against Workman Securities Corporation and anyone else who may be responsible for the damages I suffered. In return for the $1,070,823.27 payment provided herein, I assign to Jackson the right to recover that sum from Workman Securities Corporation and anyone else responsible for the injuries I suffered in the accident. I acknowledge that Jackson may file a lawsuit to pursue the claims I hereby assign, and I agree to cooperate in that lawsuit." (Doc. No. 41, Heuel Aff., Ex. 1.)

[2] Jackson National alleges that Workman owed Jackson National a duty to exercise reasonable care in appointing and supervising its producers and that Workman was negligent in carrying out its duties under the contract. (Doc. No. 25, First Am. Compl. ¶¶ 69-70 ("Workman failed to exercise reasonable care in the carrying out of its duties . . . specified in the Agreement.")) 

3 Waddell & Reed, Inc. is the broker-dealer that employed Shields in 2005. Pursuant to the parties' Joint Stipulation of Dismissal, Workman's Third-Party Complaint against Waddell & Reed, Inc. was dismissed on January 25, 2010. (Doc. No. 65.)

and breached her duty by not following up with Jackson National or Workman when she knew or should have known of the existence of the alleged misrepresentations in January 2006, or at the very least, January 2008." *Id.* ¶ 38. Workman argues that "Sanderson's unreasonable delay proximately and directly caused the damages allegedly suffered by Jackson National," and "[t]hus, Sanderson is liable for negligently contributing to the damages suffered by Jackson National." *Id.* ¶¶ 40, 41.

On January 26, 2008, Sanderson noticed that "the market value of her variable annuity had dropped below her initial investment amount by approximately $2,000. *Id.* ¶ 18. Sanderson then contacted Petracek, who advised her to contact Jackson National directly "if there were any problems," which Sanderson failed to do at that time. *Id.* ¶ 19. Sanderson did not write to Jackson National until September 25, 2008, at which time she alleged that Petracek had misrepresented that her investment would never decline in value and that he had fraudulently held himself out to be an agent of Jackson National. *Id.* ¶¶ 21, 22.

Sanderson now asks this Court to dismiss Workman's Third-Party Complaint against her with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss must be granted in its entirety.

## II. STANDARD OF REVIEW

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate

actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949.

In sum, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where the Court finds that the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the pleader is not entitled to relief. *Id.*, citing Fed. R. Civ. P. 8(a)(2).

### III. DISCUSSION

**THE COMPLAINT AGAINST SANDERSON MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**.

In order to survive the motion to dismiss, Workman's claims against Sanderson must be facially plausible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The facts alleged must allow the court to draw a reasonable inference that Sanderson is liable to Workman in contribution for the misconduct alleged. *Id.* Here, where Sanderson and Workman have no common liability to

Jackson National, the facts alleged, even if assumed to be true, do not permit the Court to reasonably infer Sanderson's liability to Workman in contribution.

A.   **Standard for Liability in Contribution**

Under Minnesota law, a right to recovery in contribution arises where: 1) "both parties were subject originally to a [c]ommon liability;" and 2) one party "has taken more than his just share of the burden." *American Auto. Ins. Co. v. Molling*, 57 N.W.2d 847, 851-52 (Minn. 1953), citing *Duluth, M. & N. Ry. Co. v. McCarthy*, 236 N.W. 766, 768 (Minn. 1931); *see City of Willmar v. Short-Elliott-Hendrickson, Inc.*, 512 N.W.2d 872, 874 (Minn. 1994); *Milbank Mut. Ins. Co. v. Village of Rose Creek*, 225 N.W.2d 6, 9 (Minn. 1974) ("The right to recover matures only where one tortfeasor has paid more than its share of the loss measured by the equitable principle of the extent to which the settling tortfeasor has relieved the other tortfeasor of its potential liability.").

If there is no common liability there can be no contribution. *Farmers Ins. Exchange v. Village of Hewitt*, 143 N.W.2d 230, 235 (Minn. 1966). "Common liability exists when both parties are liable to the plaintiff for the same damages, even though their liability may depend on different legal theories." *City of Willmar*, 512 N.W.2d at 874 (determining that common liability may exist where one party's liability to the plaintiff City is for alleged negligence, while another's liability is for alleged breach of warranty)*,* citing *Farmers Ins. Exch. v. Village of Hewitt* 143 N.W.2d 230, 233 (1966). If, however, "the concurring negligence of the party from whom contribution is sought gives the injured party no cause of action against him, the claimant cannot recover contribution, even though such concurring negligence was a proximate cause of the injury." *American Auto. Ins. Co.,* 57 N.W.2d at  851; *see Koenigs v. Travis*, 75 N.W.2d 478, 483 (Minn. 1956) ("[A] party compelled to discharge a liability for a tort cannot recover

contribution from another unless his participation in the tort gave the injured party a cause of action against him.")

"While the right to contribution arises as of the time of the tortious conduct, and it is common liability, not common tortious conduct, which gives rise to the cause of action, it is not an independent action in the sense that it is in law 'dependent upon the separate liability of (the tortfeasors) to the injured party.'" *Milbank Mut. Ins. Co.*, 225 N.W.2d at 9, quoting *American Auto. Ins. Co.*, 57 N.W.2d at 854. Therefore, the right to seek contribution does not necessarily amount to a right to recover in contribution. *Milbank Mut. Ins. Co.*, 225 N.W.2d at 9, citing *Employers Mutual Cas. Co. v. Chicago, St. P.M. & O. Ry. Co.*, 50 N.W.2d 689 (1951); *see also Dodge County v. Martin*, 136 N.W.2d 652, 654 (Minn. 1965) ("There does not seem to be much dispute about the proposition that the doctrine of contribution is appropriate where there is a common liability among parties under circumstances where the situation of the parties is equal and where they are under a common burden of liability.")

      **B.**    **Assuming, without deciding, that Workman is subject to more than its fair share of damages, Workman has failed to demonstrate common liability sufficient to justify an action against Sanderson for contribution.**

Workman alleges that the common liability it shares with Sanderson arises from their independent breaches of separate duties to Jackson National. (Doc. No. 57 at 13.) Workman argues that, while its own liability to Jackson National stems from its alleged failure to supervise its agents, Sanderson is liable to Jackson National because she "had a duty to mitigate her damages and breached her duty by not following up with Jackson National or Workman when she knew or should have known of the existence of the alleged misrepresentations [by Petracek] in January 2006 or, at the very least, January 2008." (Third-Party Compl. ¶ 38.) Thus, Workman

asserts that Sanderson is liable to Workman in contribution because she negligently contributed to Jackson National's damages. *See id.* ¶ 41.

Workman relies on *Mike's Fixtures, Inc. v. Bombard's Access Floor Systems, Inc.* for the proposition that Sanderson is liable to it in contribution as a result of her alleged breach of her separate duty to Jackson National to mitigate her damages. 354 N.W.2d 837, 839 (Minn. Ct. App. 1984) ("Where it is not reasonably possible to make a division of the damage caused by separate acts of negligence, closely related in point of time, the negligent parties, even though they acted independently, are jointly and severally liable . . . .We only announced a rule of damage apportionment applicable where two persons independently and unintentionally breach separate contracts to the same person."); *see also Duluth Superior Erection, Inc. v. Concrete Restorers, Inc.*, 665 N.W.2d 528, 538 (Minn. Ct. App. 2003) (determining that, where the sole contract at issue was the contract between Duluth Superior and Concrete Restorers, the exception in *Mike's Fixtures* was inapplicable: "In Minnesota, joint-and-several liability for damages in contract actions applies only where two persons independently and unintentionally breach separate contracts, closely related in point of time, to the same person, and it is not reasonably possible to make a division of the damages caused by the separate breaches.").

Still, where tortious acts "alleged in both the original complaint and the third-party complaint relate to the same damaging result" but "are otherwise wholly different in nature," contribution is not the appropriate remedy. *See Altendorfer v. Jandric, Inc.*, 199 N.W.2d 812, 814 (Minn. 1972) (determining that "the third-party complaint does not allege a common liability for concurring negligence, a requisite for shared responsibility by contribution" where the negligence alleged in a homeowner's complaint against the builder and in the builder's third-

party complaint against the municipality are related to the same damaging result but are otherwise wholly different in nature).

Here, Workman argues that Sanderson breached her "duty to bring Petracek's alleged fraud to the attention of Jackson National in a timely manner" on or about January 26, 2008, when she first noticed the decreased market value of her annuity and contacted Petracek, who told her to contact Jackson National directly since he was no longer licensed to sell Jackson National products. (Doc. No. 57 at 4, 9, 13.) Workman alleges that Sanderson was negligent in waiting almost nine months to submit a complaint to Jackson National, thus causing Jackson National's damages to increase from $2,000 to more than $360,000. *Id.*[4]

Although Sanderson's delay in reporting Petracek's fraudulent misrepresentations to Jackson National may have correlated to an increased market loss of her investment, any duty she owed to Jackson National is entirely separate from Workman's obligations to Jackson National. Any duty owed by Workman to Jackson National arose as a result of the contractual agreement between them. Thus, any tortious act by Sanderson is "wholly different in nature" from the contractual breach alleged against Workman.

Furthermore, any negligence on Sanderson's part in failing to contact Jackson National in a timely fashion did not occur concurrently with any contractual breach by Workman for failing to indemnify Jackson National for its reimbursement of Sanderson's investment. *See Altendorfer*, 199 N.W.2d at 814. In fact, Jackson National opted to settle Sanderson's dispute by providing her with a full refund of her initial investment as opposed to awaiting further

---

[4] Workman also alleges that, when she finally reported the fraud in September 2008, Sanderson failed to notify Jackson National that she received an email from Petracek in December 2005 which advised her that Petracek could not assist her with the purchase of her variable annuity until February 2006 because he would not be licensed with Jackson National until that time and, she, thus, fraudulently induced the refund of her investment. (Doc. No. 57 at 13-14.) This allegation, however, does not appear in Workman's Third-Party Complaint as a basis for the relief sought. (*See generally* Doc. No. 32.)

investigation of her claim. Therefore, the duty (if any) to mitigate damages related to Workman's contractual obligation to indemnify Jackson National would have likely fallen upon Jackson National and not Sanderson.[5]

In this case, the allegations supporting Jackson National's First Amended Complaint against Workman, together with the circumstances surrounding Sanderson's settlement with Jackson National, do not establish common liability. *See Altendorfer*, 199 N.W.2d at 814 ("If plaintiffs were to recover from [Defendant] on their claim of negligence in installation or construction, it would be because of that negligence and not because of any breach of duty, contractual or otherwise, owed [Defendant] by the municipality or a demonstrably greater liability of the municipality for which equity would provide indemnification.") All four counts of Jackson National's First Amended Complaint against Workman are based upon Workman's alleged breach of duties it owed Jackson National pursuant to the contractual agreement between them. Thus, any damages Jackson National may ultimately recover from Workman will result from Workman's breach of contract and not from Sanderson's alleged negligence or failure to mitigate damages. Moreover, Sanderson is not a joint tortfeasor in any act of negligence related to the breach of contract by Workman, and any delay on her part did not provide Jackson National (or Workman) with a cause of action against her. *See American Auto. Ins. Co.,* 57 N.W.2d at 851.

For the reasons articulated herein, the Court finds that there is no common liability between Sanderson and Workman to justify an action against her for contribution. To survive

---

[5] This Court reserves judgment on this issue and recognizes that the lack of substantive investigation is part of the subject of the initial lawsuit. (First Am. Compl. ¶ 61.) The Court simply notes, however, that Workman does not allege that Sanderson had any contractual duty to report Petracek's fraudulent behavior in a timely manner or that she otherwise owed, and subsequently breached, any contractual duty to Jackson National (or to Workman for that matter). (*See generally* Doc. No. 32.)

Sanderson's motion to dismiss, Workman's third-party complaint must contain sufficient factual matter that, if accepted as true, would state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting *Twombly*, 550 U.S. 544, 570. Workman's third-party complaint against Sanderson has facial plausibility only if it contains factual allegations that allow the Court to draw the reasonable inference that Sanderson is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 556. Since the facts alleged by Workman do not permit the Court to infer more than the mere possibility of misconduct by Sanderson and do not support an action for contribution, Workman's third-party complaint fails to state a valid claim. *See Iqbal*, 129 S.Ct. at 1950.

In sum, based on the facts alleged by Workman, this Court finds it unreasonable to infer that Sanderson is liable to Workman in contribution. Thus, Count 1 of the Third-Party Complaint fails to state a claim upon which relief may be granted and must be dismissed with prejudice.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Third-Party Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#38] be **GRANTED** in its entirety and Count I of the Third-Party Complaint as it pertains to Gayle Sanderson be **DISMISSED with prejudice**.


DATED: March 19, 2010

*s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 2, 2010**, written objections

which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **April 2, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.