# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JACKSON NATIONAL LIFE INSURANCE COMPANY, | Civil No. 09-1024 (JRT/FLN) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| WORKMAN SECURITIES CORPORATION, | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| THOMAS M. PETRACEK, | |
| Intervenor/Third-Party Defendant. | |

Shane H. Anderson, Mychal A. Bruggeman, and Timothy J. Grande, **MACKALL, CROUNSE & MOORE, PLC**, 901 Marquette Avenue, Suite 1400, Minneapolis, MN 55402, for plaintiff.

Benjamin R. Skjold, Christopher P. Parrington, and Ryan P. Meyers, **SKJOLD BARTHEL, PA**, 222 Ninth Street South, Suite 3220, Minneapolis, MN 55402, for defendant/third-party plaintiff.

Chad A. Snyder, **SNYDER GISLASON FRASIER LLC**, 233 Park Avenue, Suite 205, Minneapolis, MN 55415; Thomas B. Caswell, III, **ZELLE HOFMANN VOELBEL & MASON LLP**, 500 Washington Avenue South, Suite 4000, Minneapolis, MN 55415, for intervenor/third-party defendant.

Gayle Sanderson bought a Perspective II Variable Annuity policy from plaintiff Jackson National Life Insurance Company ("Jackson") that had been marketed to her by intervenor Thomas Petracek. When the policy's value dropped below the purchase price, she sought a refund from Jackson, claiming that Petracek had represented to her that the

value of the policy would never fall below the purchase price.  Upon investigation, Jackson discovered that – while Petracek had marketed the policy to Sanderson – the application for sale had been signed by Derrick Shields, an agent of defendant Workman Securities Corporation ("Workman").  Jackson decided to refund Sanderson the purchase price of the policy and brought claims against Workman for indemnification, failure to supervise, failure to cooperate, negligence, and fraud.  Workman brought a claim against Petracek in state court and Petracek moved to intervene in this litigation.  Since Workman received a commission from the sale of the Sanderson policy and was under a Selling Agreement with Jackson at the time Shields signed the policy application, the Court finds Workman owed Jackson a duty to indemnify and a duty to supervise Shields. The Court further finds that Workman's claim against Petracek fails based on the terms of his employment agreement.

## BACKGROUND

In the fall of 2005, Gayle Sanderson sought retirement advice, so she contacted Thomas Petracek with whom she had worked previously on investment planning.  (Aff. of Shane Anderson, July 6, 2010, Ex. B at 49–52, Docket No. 99.)  He recommended a Perspective II Variable Annuity policy sold by Jackson.  (*Id.* at 65–73.)  Petracek told Sanderson that he was not licensed to sell the product but that he soon would be.  (*Id.* at 77–78.)  He told her he could have his "supervisor" sign the paperwork so that it could be processed before Sanderson went on an extended trip.  (*Id.*, Ex. P.)  Petracek was referring to his son-in-law Shields who had recently joined Workman as a selling agent.

Shields joined Workman on January 12, 2006.  (*Id.*, Exs. A, D.)  Petracek would later join Workman on February 1, 2006.  (*Id.*, Ex. B at 136–37.)  However, at the time Petracek convinced Sanderson to buy the policy, and at the time she filled out a significant portion of the paperwork to effectuate that purchase, December 2005, neither Petracek nor Shields were authorized to sell Jackson products through Workman or any other company.  By signing Sanderson's application in January 2006, Shields was certifying that he had worked with Sanderson, discussed the policy with her, knew of her investment goals, and provided her material information about the policy.  (*Id.*, Ex. W.) However, Shields had taken no such actions.  The parties present conflicting evidence as to whether Workman knew Shields was falsely certifying the application; however, Workman submitted the application with the false certification and received a commission for the sale.  (*Id.*, Ex. X.)

When Workman became a broker of Jackson products in November 2005, it entered into a written agreement with Jackson (the "Selling Agreement").  (*Id.*, Ex. A.) The Selling Agreement contained a clause whereby Workman agreed to indemnify Jackson for losses resulting from its sale of Jackson products.  (*Id.* at 8.)  The Selling Agreement also contained a clause under which Workman had sole responsibility for the training and supervision of its representatives.  (*Id.* at 4.)  When Workman hired Petracek, Workman and Petracek signed a Registered Representative Agreement ("RRA") which included an indemnification clause stating that Petracek would indemnify Workman for legal actions based on transactions occurring prior to the agreement.  (*Id.*, Ex. N ¶ 6.2.)  The RRA also included a termination clause indicating that only certain

clauses of the RRA would survive termination of the agreement and it did not include the indemnification clause as a surviving clause. (*Id.* ¶ 9.5.)[1] On August 19, 2008, Workman terminated Petracek's RRA for an unspecified reason. (*Id.*, Ex. F.)

On September 25, 2008, when the policy fell below the purchase price, Sanderson contacted Jackson and complained that Petracek had misrepresented the policy, that she had bought the policy because Petracek guaranteed it would not fall below the purchase price, and that Petracek was not licensed to sell her the policy. (*Id.*, Ex. Z.) After receiving her complaint, a Jackson representative, Kerri Page, contacted Workman to investigate. The Workman representative, Klaus Siepmann, took a number of steps including reviewing the file, creating a to-do list, contacting Petracek, Shields, and Sanderson, interviewing representatives at Jackson and Workman who were involved with the sale, and communicating the status of the investigation back to Page. (Aff. of Christopher P. Parrington, July 1, 2010, Ex. D, Docket No. 93.) After this investigation, Workman sent Sanderson a letter on October 3, 2009 informing her that at the time of the sale, Petracek did not work for Workman and she needed to work with Jackson regarding her complaint. (Anderson Aff., Ex. GG, Docket No. 99.) Workman sent this letter prior to consulting with Jackson about its determination. (*Id.*)

On December 2, 2008, Jackson decided to reimburse Sanderson for the full purchase price of the policy. (*Id.*, Exs. JJ, KK.) As a result, it suffered a loss of $362,508.23 due to the drop in the market from the time Sanderson purchased the policy. (*Id.*) Jackson then sought indemnification from Workman. (*Id.*, Ex. MM.) In January

---

[1] On January 25, 2008, Workman and Petracek signed a new RRA with essentially the same provisions as the previous RRA for the purposes of this motion. (Aff. of Chad Snyder, July 6, 2010, Ex. G, Docket No. 108.)

2009, Workman brought an indemnification action against Petracek in Minnesota state court.  (*Id.*, Ex. QQ.)  In April 2009, Jackson brought this action against Workman.  In October 2009, the parties stipulated to the intervention of Petracek in this action so that all issues could be decided concurrently.

All parties have now moved for summary judgment.  Jackson argues the terms of the Selling Agreement dictate the sale to Sanderson and that Workman is responsible for claims arising out of the contract, entitling it to summary judgment under the plain language of the contract.  Workman argues Petracek sold Sanderson the policy when he was not a Workman agent and worked with Jackson directly; therefore it is entitled to summary judgment since the contract does not control the sale.  Petracek argues that he is entitled to summary judgment since he has no responsibility to indemnify Workman and also because his RRA terminated and the duty to indemnify did not survive termination of the agreement.

## DISCUSSION

## I.    STANDARD OF REVIEW[2]

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to

---

[2] The Selling Agreement between Workman and Jackson specifies that Michigan law applies.  The parties note, however, that Minnesota law and Michigan law are the same on all underlying legal issues and Minnesota law is cited in their briefs.  *See Source One Enters., L.L.C. v. CDC Acquisition Corp.*, No. 02-4925, 2004 WL 1453529, at *5 n.4 (D. Minn. June 24, 2004).  At the hearing on the parties' motions for summary judgment, the parties stipulated to the application of Minnesota law.

return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   FAILURE TO INDEMNIFY

Whether Workman is responsible under the Selling Agreement to indemnify Jackson hinges on two issues: (1) when, and by whom, was the policy "sold" to Sanderson; and (2) did the settlement with Sanderson trigger Workman's duty to indemnify. *See Osgood v. Med., Inc.*, 415 N.W.2d 896, 903 (Minn. Ct. App. 1987).

### A.   Contract Formation

"The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." *Commercial Assocs., Inc. v. Work Connection, Inc.,* 712 N.W.2d 772, 782 (Minn. Ct. App. 2006). Under Minnesota law, an application for an annuity policy is an offer that does not become a contract until accepted by the insurance company. *See Heideman v. NW. Nat. Life Ins. Co.*, 546 N.W.2d 760, 763 (Minn. Ct. App. 1996) (citing *Frank v. Ill. Farmers Ins. Co.,* 336 N.W.2d 307, 310 (Minn. 1983)). "The power of acceptance lies with the insurance company, and without its assent or acceptance, no valid contract exists." *Id.* (citing *Sawyer v. Mut. Life Ins. Co.,* 207 N.W. 307, 308 (Minn. 1926)).

Here, while Petracek recommended to Sanderson the policy she would later buy, and gave her many of the documents that she needed to purchase the policy, the application that Shields signed and Workman sent to Jackson was the "offer" that Jackson ultimately accepted.  As a result, the Court finds that the policy was "sold" to Sanderson on January 26, 2006, as identified in the policy contract.  (Anderson Aff., Ex. Y, Docket No. 99.)  This date is after Workman entered into the Selling Agreement with Jackson, after Shields became a Workman representative, but before Petracek became a Workman representative.  Further, since a Workman agent signed the application and Workman received the benefit from the sale, namely the commission, the Court finds that Workman sold the policy to Sanderson.  This determination places Sanderson's claim within the four corners of the Selling Agreement between Jackson and Workman.

## B.    Duty to Indemnify

The existence of a duty to indemnify is a legal question.  *Franklin v. W. Nat. Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn. 1998).  "[T]he duty to indemnify is triggered only when liability is assessed on a claim within the policy coverage."  *Seren Innovations, Inc. v. Transcon. Ins. Co.*, A06-917, 2006 WL 1390262, at *8 (Minn. Ct. App. May 23, 2006).  Liability need not be in the form of a verdict – a settlement can trigger the duty to indemnify.  *Miller v. Shugart*, 316 N.W. 729, 735 (1982).  Minnesota courts generally approve of insurance settlements when coverage is in doubt.  *See, e.g.*, *Haarstad v. Graff*, 517 N.W.2d 582, 584 n.1 (1994).

In the case of one party seeking indemnity from another for a settlement "entered into before trial . . . , the party seeking indemnification must show the settlement was

reasonable and prudent." *Osgood*, 415 N.W.2d at 903 (citation omitted).   What is reasonable and prudent "involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claims, as well as the risks of going to trial." *Glass v. IDS Fin. Servs., Inc.*, 778 F. Supp. 1029, 1083 (D. Minn. 1991) (citing *Miller*, 316 N.W.2d at 735) (denying summary judgment in part because the entity settling did not provide the indemnifier notice of the settlement negotiations).   The party seeking indemnification need only show it **could have** been liable under the facts shown at trial not whether they **would have** been.   *Id.* (citing *Osgood*, 415 at 903); *see also Lemmer v. IDS Props., Inc.*, 304 N.W.2d 864, 869 (Minn. 1980) (holding that the settling defendant was entitled to indemnity even after a jury eventually found no liability on the part of the defendant). Further, in the context of a contractual duty to indemnify, as opposed to a claim for contribution, when the parties have a written indemnity contract, "the actual liability requirement [is] superfluous."   *Glass*, 778 F. Supp. at 1084 n.88.

Here, Workman concedes that Shields falsely signed the application certifying that he had discussed the policy with Sanderson.   Further, all parties agree that Petracek was not licensed to sell the policy, although there is evidence that Sanderson knew Petracek was not licensed since he told her he could not sign the application.   Given Sanderson's knowledge, it is not certain whether Jackson would have been liable for the full amount of the policy – however, the question is whether they **could** have been held liable.   It was reasonable for Jackson to forgo a trial when there was an obvious misrepresentation (the signature by Shields) which **could** have triggered its liability to Sanderson.   As a result, the Court finds that the settlement was reasonable and prudent and triggered Workman's

duty to indemnify. Given the existence of a written indemnity clause, there is no need for Jackson to prove it actually would have been liable for that amount. *See id.* Therefore, the Court will grant summary judgment to Jackson on its claim of failure to indemnify and deny Workman's summary judgment motion on the indemnity clause.

## III.   FAILURE TO SUPERVISE

Jackson's claim of failure to supervise is based on Workman's alleged failure to supervise both Petracek and Shields in connection with the sale of Sanderson's policy. There is no general duty to supervise absent a contractual provision. *Goette v. Press Bar and Cafe, Inc.*, 413 N.W.2d 854, 856 (Minn. Ct. App. 1987). Petracek was not an agent of Workman when he worked with Sanderson.   Therefore, as a matter of law, Workman could not breach a duty to supervise Petracek at a moment in time prior to him becoming an agent. *Cf. Semrad v. Edina Realty, Inc.*, 470 N.W.2d 135, 146 (Minn. Ct. App. 1991) (finding no liability for the duty to supervise absent a contractual relationship between the injured party and the principal). However, Shields was an agent of Workman when he signed the application.

The contract states that "[Workman] is solely responsible for all acts and omissions of each [agent], and [Jackson] shall [not] incur any liability . . . for the supervision of [Workman's agents]." (Aff. of Shane Anderson, July 6, 2010, Ex. A at 4, Docket No. 99.) Neither party argues that the contract is ambiguous, thus the contract is given its plain and ordinary meaning. *Excel Roofing, Inc. v. State Farm Fire and Cas. Co.*, No. 10-299, 2010 WL 5211554, at *2 (D. Minn. Dec 16, 2010). Shields' actions in falsely certifying the application trigger the clause of the contract protecting Jackson

from liability for Shields' actions.  Whether Workman had knowledge that Shields was falsely certifying that he had discussed the policy with Sanderson is immaterial, since the contract contained no knowledge requirement, and the claim is a contract-based claim.[3] (*See* Compl. ¶¶ 44–53, Docket No. 1.)  Therefore, the Court finds that since Shields was a Workman agent when he falsely certified the application, the supervision clause of the contract was triggered.  Given that the settlement with Sanderson was based in part on the fact that Shields signed the certification fraudulently, the Court grants summary judgment to Jackson on its claim of failure to supervise and denies Workman's motion.

Since the Court grants summary judgment to Jackson on the failure to indemnify and failure to supervise claims, Workman is liable to Jackson for $362,508.28, the difference between the purchase price of the policy and its actual value at the time Jackson reimbursed Sanderson.  This finding, however, does not settle the dispute in full since Jackson has brought other claims against Workman and seeks attorney's fees and costs in the litigation.

## IV.   FAILURE TO COOPERATE

Whether a party has failed to cooperate in an insurance situation is typically a question of fact for a jury.   *Rieschl v. Travelers Ins. Co.*, 313 N.W.2d 615, 617 (Minn. 1981).  A movant must show "substantial and material lack of cooperation resulting in substantial prejudice to its position."   *Id.* (overturning a declaratory judgment for an

---

[3] Were the claim of failure to supervise one of negligence, then the elements of the claim would necessitate a determination of whether Workman exercised reasonable care in the supervision of Shields.  *See, e.g.*, *Wall v. Fairview Hosp. and Healthcare Servs.*, Nos. C6-95-153, C8-95-154,1995 WL 450501, at *2 (Minn. Ct. App. Aug. 1, 1995) (finding a duty to supervise only existed as to employees and further that the plaintiff failed to demonstrate the employer knew or should have known of the offensive conduct to incur liability).

insurer based on lack of cooperation by the insured).[4]  The movant also carries the burden of proof.  *Juvland v. Plaisance*, 96 N.W.2d 537, 541 (Minn. 1959).

Here, Jackson argues a failure to cooperate since Workman sent a letter to Sanderson disclaiming responsibility for her policy.   However, Workman presents evidence of its actions in connection with investigating the claim including numerous emails between the Jackson investigator and the Workman investigator.   While the Workman investigator never received a response from Shields or Petracek, Workman presents evidence that it was cooperating with Jackson in the investigation, even though it made a **determination** that it was not liable for the claim.   At the same time, Workman's letter to Sanderson disclaiming responsibility was sent before discussing the determination with Jackson and without talking to Petracek or Shields directly.   As a result, the Court finds that questions of material fact remain as to whether Workman's investigation was reasonable.   As a result, the Court denies summary judgment to both parties on the claim of failure to cooperate.

## V.    NEGLIGENCE AND FRAUD

Generally, Minnesota does not recognize an action for negligent breach of contract.   *See Lampert Lumber Co. v.* Joyce, 405 N.W.2d 423, 424 (Minn. 1987); *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn. 1983).   Where the grounds of a legal action are contractual, a claim in negligence does not lie.   *Lesmeister*, 330 N.W.2d at 102.

---

[4] The caselaw on failure to cooperate can only be applied through analogy to the instant case because the cases of which the Court is aware deal with the failure of an insured to cooperate with an insurer.  Here, Workman, through the indemnification clause, was essentially the insurer and is accused of failing to cooperate with the insured, Jackson.  The principles of the cause of action as discernable from these cases, however, are applicable despite the unusual circumstances.

Here, however, Jackson alleges fraud in addition to its contract claims.  As a result, the survival of the negligence claim depends on the survival of the fraud claim, since negligence can only survive if Workman breached a duty imposed in law, not merely one imposed by contract.  *Lansing v. Concrete Design Specialities, Inc.*, No. A05-1543, 2006 WL 1229638, at *5 (Minn. Ct. App. May 9, 2006) (citing *Keiper v. Anderson*, 165 N.W. 237, 239 (Minn. 1917)).

In its claim of fraud, Jackson must demonstrate that Workman (1) made a false representation involving a past or present fact that was material, and susceptible of knowledge; (2) Workman must have known it to be false or must have asserted it as of its own knowledge without knowing whether it was true or false, and must have intended to induce Jackson to act, or Jackson was justified in acting upon it; (3) Jackson must have been so induced to act or so justified in acting in reliance upon the representation; and (4) Jackson must have suffered damage which was attributable to the misrepresentation. *Randall v. Lady of Am. Franchise Corp.*, 532 F. Supp. 2d 1071, 1099 (D. Minn. 2007) (citing *Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 39–40 (Minn. 1967)).

As to the first element, Workman submitted Shields' false certification regarding his interactions with Sanderson.  A representation is material if "it would naturally affect the conduct" of the other party.  *Yost v. Millhouse*, 373 N.W.2d 826, 830 (Minn. Ct. App. 1985).   Jackson argues it would not have issued the policy if it had known the representation by Shields was false, therefore the false certification is material and the third element of inducement is satisfied.   Regarding the fourth element, Jackson's damages are the difference between the settlement it offered Sanderson and the actual

value of the policy at the time of reimbursement, which was offered as a result of the misrepresentation by Shields.

The remaining issue, therefore, is the second element of whether Workman knew of the misrepresentation by Shields.   The parties present conflicting witnesses on the issue of whether Shields' supervisors knew about the falsity of the certification.  Shields testified that he asked his Workman supervisor, Bob Vollbrecht, if he should sign given that he had not worked with Sanderson directly and that Vollbrecht told him to "[s]ign it anyway."  (Anderson Aff., Ex. E at 42–44, Docket No. 99.)  Vollbrecht denies any such knowledge.   (Parrington Aff., Ex. C at 62, Docket No. 93.) As a result, summary judgment is not appropriate on this claim since issues of material fact remain in dispute. Therefore, the Court denies summary judgment to either party on the fraud claim.  As a result, the negligence claim survives summary judgment since the fraud claim is as an independent tort on which the negligence claim can stand.  The Court thereby denies summary judgment to both parties on the negligence and fraud claims.

## VI.   PETRACEK

Petracek filed for summary judgment on Workman's claim for indemnification. He argues that the indemnification clause of his RRA with Workman did not survive the termination of that agreement.   The termination section of the agreement, Title 8, enumerates the provisions that are to survive termination and does not include the indemnification clause.  (Snyder Aff., Ex. G, Docket No. 108.)

"If the language of the [contract] is unambiguous, it must be given its plain and ordinary meaning.  If the language is ambiguous, it is construed against the [drafter]."

*Excel Roofing, Inc.*, 2010 WL 5211554, at *2.  In evaluating what clauses of a contract survive its termination, courts first look at enumerated items identified as intended to survive in the termination clause.  Beyond those enumerated, only when a specific clause states it survives termination, despite its omission from the termination clause, have courts looked past the termination language and allowed the unenumerated clauses to survive.  *See, e.g.*, *Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 343 (5th Cir. 1986) ("[The] claim that the arbitration clause terminated when the rest of the contract allegedly terminated is contradicted by the express language of the arbitration clause, which provides that '[t]his provision shall survive the termination of this agreement.' . . . This specific provision controls the more general provisions of the termination clause.").

Workman argues that the indemnification clause survives because of the nature of indemnification.  However, that "argument begs the question of which provisions 'are intended to survive'. . . ."  *Webb Candy, Inc. v. Walmart Stores, Inc.*,  No. 09-2056, 2010 WL 2301461, at *6 (D. Minn. June 7, 2010) (finding absent specific enumeration in a termination clause, a separate clause did not survive termination of the contract).  The Court finds no ambiguity in the termination clause or the indemnification clause, and if such ambiguity existed, it would be resolved against Workman, the drafter.  Therefore, the Court determines the indemnification clause did not survive termination of the RRA.  Since Petracek was terminated prior to Sanderson bringing her claim, the indemnification clause was not triggered and he owes Workman no duty.  The Court thus grants summary judgment to Petracek.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

    1.    Jackson National Life Insurance Company's motion for summary judgment [Docket No. 96] is **GRANTED in part** and **DENIED in part**.

        a.    The motion is **GRANTED** as to Counts I and II of the complaint.

        b.    The motion is **DENIED** in all other respects.

    2.    Workman Securities Corporation's motion for summary judgment [Docket No. 90] is **DENIED** in its entirety.

    3.    Thomas M. Petracek's motion for summary judgment [Docket No. 105] is **GRANTED**.

DATED:  March 17, 2011  
at Minneapolis, Minnesota.            s/ John R. Tunheim  
                                  JOHN R. TUNHEIM  
                            United States District Judge